We will hear argument next in No. 22-2249, Lambro v. United States. Um, and he did shows as an individual, we know that the factual demonstrate that Mr. Lambro went in and interviewed with a hiring, person, based on a introduction by his father. Again, this was not him responding to a BPA or anything of that nature. And and again this. Until you claim, I, I don't think you quite argue that he actually did have a personal services contract under FAR 37.104. That did not happen. Voice of America did not bring the personal services contract to bear until late, until after this claim was filed in January of 2021. You're not asserting that he actually had such a contract. No, no. So you're accepting for now that putting aside the FLSA. Yes. That there was no congressionally authorized creation of an employment relationship between the agency and Mr. Lambro. I don't know. I don't know. We're at the place where we can see that point. I think the government identified anything outside the FLSA. That's that created that relationship. We sure we don't. We don't agree with the government that that the the word appointment in in Title 5 is as precisely defined as they are. I mean, it's simply it's in the definition section of Title 5. A federal employee is defined as someone who has been appointed. I just want to get the terms of the question that that we're dealing with here. It's absolutely plain by virtue of FAR 37.104 that you don't need to have an appointment. That's right. You need some congressional authorization to create a employment relationship with an agency. Right. Yes. Well, arguably, employment relations. And I think your argument is FLSA does it on its own. That is our argument. We argue and we think that the government's the implications of the government's arguments go far beyond what they've breached in their in their documents and far beyond. I mean, the implications here are vast. I mean, the government's argument in its response brief is. I'm sorry to interrupt. You know, implications don't come first statutory stat textual disciplined legal arguments come first. So start with the text and explain how you get to the conclusion that you want to get to. And then you can say and the consequences of doing otherwise would be terrible. And they're going to say the opposite on their side. No, no, clearly. So the FLSA, as we started and the presumption is the FLSA defines employee. And it defines employee as those who do work. And it captures in that group those who work for the federal government. Now, the government's position is like, well, wait, wait, there's this carve out. There's this requirement. And understand when the court already knows the economic realities test that we're here arguing about was not appears in statute, doesn't appear in any statutes. It is a common law created doctrine to combat the defense of weight. FLSA protections, just like here, FLSA protections don't apply. We never hired them. We never made them our employees. That's what commercial companies have been doing for time immemorial. Right. And this is the first time that a misclassification case that we've that anyone's been able to find that has been brought against the government. And said, hey, you've deprived these employees, these what we argue are computer employees of the common protections of overtime protection, all kinds of things. They can't collectively bargain. All of the benefits that would be that would be helpful to take the suggestion of Judge Toronto. And to the extent you have it there, pull out the actual language and talk from there as opposed to talking more in general. No, I appreciate that. Thank you. So, I mean, your argument is that the FLSA provides its own specific definition for the context of FLSA. That's right. And that definition of anybody that is employed by the federal government or anybody that's employed by an employer brought more broadly has to be an individual that is suffered or permitted to work by an employer, whether that employer is a federal employer or a non-federal employer. Is that your argument? That is precisely our argument. So Section 203 G is the key provision in the FLSA that defines what it means to be employed, to suffer or permit work. That is correct. That's on the Supreme Court and other courts took that provision and understood it to be. Let's go with something called an economic realities test. That's what suffer or permit work is really about. It's about trying to figure out what is the economic reality between this individual and that employer. That's correct, Your Honor. So this is – and this is brought not just in FLSA context. As we briefed, it's also brought in Title VII claims. It's brought in Rehabilitation Act claims. Those statutes don't have this particular definition for being employed, right? Most of them point to the FLSA for the definition of an employee. Title VII points to FLSA. Rehabilitation Act points to FLSA. The only thing that doesn't point specifically to FLSA is the government's argument is Title V. Title V does not point specifically to FLSA. Title V says an employee of the federal government assembly has been appointed. Where does Title VII point to the FLSA? I'm sorry. I don't have that reference handy. I know that the courts that have ruled in favor of punitive employees in Title VII cases have ruled that – and those cases are encapsulated in our brief, the case that I'm into in my rebuttal time. But the argument is precisely as Judge Schen put it. The argument is that the FLSA defines employees very broadly as it relates to those who are afforded the protections of the Fair Labor Standards Act. And it says anybody who works or permitted to work, suffered to work, so forth, by anybody, including the federal government. So why one – and that suffer to work provision is item number three in the OPM regulation, with OPM having been delegated authority to implement the FLSA as it applies to federal employees, right? Right. So why would not one read that in the federal employment context to mean – to rely on the general requirement of congressional authorization to create a employment relationship with the federal government? So that suffering and permitting to work is not by itself sufficient without the congressional authorization coming from elsewhere. And I'm asking this because it does seem to me right now that that's what the government's argument comes down to. Well, I think Your Honor pointed out earlier that clearly under FAR Part 37 that's not required. FAR Part 37 allows for PSCs, for personal services contracts. With congressional authorization, so of course that covers it. But congressional authorization, Your Honor, as you already know, it applies to everything, including procurement. I mean you can't contract with an individual. Congressional authorization to create an employment relationship, which is why I think there's a 37-104-B or something says – one of the subsections of the FAR provision says you may enter into these contracts only to the extent there's a express or special or specific or something congressional authorization. And are also, by the way, Your Honor, to your point – And basically the rest of how you get to be a federal employee is through various forms of appointment. Right. The big one in 2105. Right. But what we're arguing here, Your Honor, is that the government sidestepped all of the rules. They sidestepped the procurement rules because none of these positions were ever competed publicly the way they were supposed to under the FAR. I'm sorry. How does that affect the statutory analysis we're engaging in right now? The reason is because by depriving Mr. Lambrow and those like him of any employment relationship with anyone, he wasn't just deprived of an employment relationship with the government. He was deprived of an employment relationship with anyone. Mr. Lambrow couldn't go to work and talk to a fellow audio tech about how much money that audio tech made without running afoul of anti-collusion provisions. And he couldn't – Mr. Lambrow couldn't quit his job without triggering a termination for default and excess procurement problems. Mr. – it's not just that he didn't have a – I'm actually quite confused what point you're making here that addresses the statutory question. Part of me is hearing you say you're giving extra reasons why he plainly was not a federal employee. I'm giving reasons why the withholding of the appointment was illegal. They withheld an appointment in order to sidestep the requirements of the FLSA and all of the other trappings of employment that would have been benefited. Had the government instead gone out and put this procurement to two or three government contractors and allowed all 750 putative employees – Is it your position that if somebody qualifies under – to use Judge Chen's shorthand – the economic realities test that implements the suffer and permit or permit provision, that that person is a federal employee not only for FLSA purposes but for other purposes? Yes. Without qualification. Oh. Yes, Your Honor. That is the only – because, again, according to the government's own arguments, that Mr. Lambrou would enjoy Title VII protections but not FLSA protections. He would enjoy Rehabilitation Act protections but not NRLA protections. It would be preposterous to assume that Mr. Lambrou would enjoy half of the suite. The definition of employee or federal employee in the FLSA applies in every other context, be it outside of the FLSA? That's your argument? Our argument is that in every place in which employee is not defined or points to the FLSA, then the governing provision of protections for what is an employee would fall under the FLSA. I thought you agreed with Judge Chen earlier, and I thought you really said because we're talking about the FLSA context, we should look at the FLSA for what employee means. Now you're making, I think, a different argument. I'm saying that there are statutes – You're making an argument I don't think you need to make for purposes of this narrow appeal about what does this particular – is this person potentially eligible for FLSA benefits? What I'm doing is I'm trying to point to the lower court's decision, which is a point period. The court's position was categorical. Its opinion was categorical. Appointment is necessary for employment, period. And it's – what I would argue is that saying that, if it affirmed – if the court affirms – if this court affirms the lower court's ruling and appointment is necessary for employment, then Mr. Lambrow and no one like him would enjoy any of the benefits of employment, including Title VII protections, NRLA protections, the Rehabilitation Act protections. It has far more reaching implications than just the FLSA, but certainly as it relates to the protections afforded by the FLSA. The FLSA says suffer to work and you're afforded these minimum wage protections. And the government's position is no, it doesn't apply to federal employees unless there is an appointment. Does that add any clarity at all? The argument is that the FLSA – for the purposes of the FLSA defines employee. Can I ask you this? In looking at the various cases that have been cited, Title VII, the Medical Leave Act case, 501 or the Rehab Act, it wasn't clear to me that except for the D.C. Circuit decision in Spirides – so please put that to one side, which is the Title VII case – that there's any case in which the employee, one, ended up being dubbed, yes, you are an employee for these purposes, or a case in which the government said you need to have a Title V or FAR or some authorization, congressional authorization, to create the employment relationship. And economic realities, common law agency is not the right test. So when, in those cases, the court was going through these multi-factor kinds of things, it didn't actually have an argument going the other way, and it repeatedly ruled for the defendant. So I'm trying to see how much of a judicial landscape is out there that says, oh, in other places the government's argument here has been rejected. Except for Spirides, I'm just not sure that's true. That's what I'd like help on. So one – you're right, Your Honor, that this is the first time in our – what we've been able to find. In Spirides, it was a Title VII case. In the federal marshal's cases out on the West Coast on the Ninth Circuit, it was presumed that those people did not work directly for the federal government. They were all under the Rehab Act, and they were all working for another contractor, and they brought their claim against government. And it was just assumed under the economic realities test because, again, the actual tortfeasor in those instances was a government employee. It was a government employee who did something wrong. Again, if Mr. Lambrow goes into work tomorrow and somebody propositions him for sexual favors in order to get work, he would be bringing a sexual harassment claim. And he would enjoy those benefits because the tortfeasor in that instance would be a government employee. But the case that they bring up, Jackson, Jackson is a case where Title V defines service members as not being federal employees. And the court goes – in Jackson it says – and by the way, service members are not listed in the FLSA as employees. Government employees are service members. The first definition says civilian employees. That's right. So Jackson – and then Jackson goes as – so far to say is, hey, we're not going to disturb this analysis of what is an employee and what isn't an employee. We're only saying that in this context because Title V specifically defines military members as a core value under Title V, not under FLSA. I mean I think the court gets my point. Service members are not encapsulated in FLSA. We understand that the military can't be held to the bounds of keeping people from working overtime or paying overtime. But all these other cases, as I think you indicated, which is my impression from having read them, they just assume – That's right. – without deciding that the test is one of the softer tests that have multi-factors or maybe even common law agency but not a test that – There needs to be formal congressional authorization outside the act that is allegedly violated. That's right. And in the case we cite too in Social Security versus – Social Security Administration versus the board, and I'm blanking on it. That case was decided by the Court of Appeals for the District of Columbia. That case only turned on the award of – The D.C. Circuit or the local court? The D.C. Circuit. The D.C. Circuit Court of Appeals. That case turned only on – It was 7,500 punitive employees. We don't get all of the facts as sort of a lower case, and that's why we don't really unpack it a lot. That case only turned on – There was an arbitration award for 7,500 Social Security employees, and the issue decided by the U.S. – by the Court of Appeals for the District of Columbia was whether or not interest applied to attorney's fees. That was it. But the presumption in that case was that the economic realities test applied because what I believe I know about that case is it was relative to 7,500 verbatim court reporters of the Social Security Administration who were misclassified. But again, it's not on the record. It's just all you can glean from the case is that the district court or the Court of Appeals for the District of Columbia applied the Back Pay Act to all of the damages and the interest application, all the damages except for interest on attorney's fees, which was deemed punitive and not applicable to the government. And when you say, I think as you have, perhaps unnecessarily – I'm not quite sure – that our ruling here that Mr. Lambrow was an employee would make him an employee of the federal government for all purposes. I think – The whole hidden caboodle of everything that goes with being a federal employee? I think that the government, by withholding appointment, were not creating another mechanism for him. I think what we are stopping short of in saying this, and only this, the government misclassified Mr. Lambrow as an independent contractor and in so doing has damaged him in a multitude of different ways to include withholding – But that sounds like a different lawsuit. The lawsuit that you filed here was just about whether he's entitled to FLSA overtime pay. That's not accurate. If you look at the Second Amendment complaint, Your Honor, we actually talk about the host of benefits, including the ability to – Well, what's the nature of your appeal here? Collectively. The nature of the appeal here is to overturn the lower court's order that appointment is necessary in order to get any of the benefits of federal employment, including what's – To get the benefits of the FLSA. And again, that's all that's encapsulated in the lower court's complaint. Again, it wasn't dismissed for inadequacy. It wasn't a technical or futility. It was simply dismissed on 12B6 on the basis that appointment is necessary in order to be afforded any of the rights of an employee. The court made a very sweeping announcement in its opinion that the FLSA did not apply to Mr. Lambereau because he was not an appointed employee of the government. And I don't remember at this point. Did the Court of Federal Claims address the FAR provision 37-105? I don't think it did so in more than dicta. It didn't actually issue an opinion relative to – Right, because you didn't claim that you were actually an employee under that provision, just that you sure should have been. Yeah, there was no – there is no tangible personal services contract under FAR Part 37 that ever existed between Mr. Lambereau and Force of America until, again, I think either shortly before or shortly after this suit was filed.  I'm sorry. And we'll hear from Mr. Carhart now. Please. May it please the Court. The trial court correctly dismissed Mr. Lambereau's complaint because he did not plausibly allege that he was an employee under the FLSA. Its decision should be affirmed. I think Judge – I'll start with Judge Toronto's question to Mr. Whitcomb about the government's position, which I think Judge Toronto articulated correctly. So our position is that there has to be some source of specific congressional authority creating an employment relationship. And what we've argued is that the FLSA is not that. What the FLSA is doing, as applied to Federal employees, is to extend the benefits of the FLSA to those individuals who are already – those eligible individuals who are already employees under Federal law. And just to be clear, it would be incorrect to say appointment is always required to be a Federal employee, but rather – and we know that because FAR – the FAR provision provides a non-appointment way of creating the employment relationship. So what's needed is congressional authorization to create that relationship. You agree with that, right? Yes. And then the big question is why doesn't the FLSA and 203G do that? Right. So to be precise, employment can mean different things in different contexts. So being a personal services contractor, contrary to Mr. Whitcomb's arguments, doesn't necessarily mean you get all of the benefits of Federal employment. It entitles you to certain benefits, though. And it's undisputed that once Mr. Lambrow became a personal services contractor at the agency, he did receive pay under the FLSA. So that's not an issue of dispute between the parties. Do you happen to know the answer to my opening question about when the contract shifted from Lambrow personally to Wayne Industries or something? If my recollection is correct – I looked into this a long time ago – I think there's a little bit of a gap between the statute of limitations dismissal and when the contract came into effect. In any event, though, it's not in the record such that the court can decide that. So to jump to the major question of why the 1974 amendments to the FLSA don't create an employment relationship. So essentially – If I were to just read Section 203, the amendments under 1974, on their face in isolation from anything and everything else that you may want to refer to, wouldn't the most logical reading be that the definition for what it means to be employed by the government is essentially the same as the definition for what it means to be employed by another employer, a non-federal employer? Given that it would appear that the definition provided in 203G, employees including to suffer or permit work, would apply equally for both non-federal employers and federal employers. The language, the symmetry of the language is the same. Any individual employed by an employer, any individual employed by the government. It goes on, though, to as a civilian in the military departments as defined in Section 102 of Title V. I don't see those phrases actually being decisive to the broader question of why doesn't this definition under 203G apply equally to both employers and then the government. So first, Congress could have just conflated the definition of private sector and federal employees. So it didn't need to break out public employee as it did. I'm sorry. It needed to say which components of the federal government were going to be relevant covered federal employers. And also, the one other thing it did was to put the civilian thing expressly. But all the rest is just who the employer is. So it could have done that by amending the definition of employer, which is one of the things that the FLSA did. Excuse me. One of the things the 1974 amendments did. Originally, the United States was carved out from the definition of employer. And then the 1974 amendments removed that carve out. It could have, to the extent it wanted to caveat the removal of the carve out, it could have done that in the definition of employer. So that's one point. I'm still not sure why I should block my view of 203G when I'm trying to interpret what does it mean to be any individual employed by the government. So obviously, a big part of our argument is the backdrop of existing law. I think, Your Honor, Judge Chen, you're asking about just the text. Yeah. And I understand that. I think that the reference to Title V is the other part of the argument that's distinctive textually. Now, the D.C. Circuit in Jackson v. Modley did look at similar text from Title VII and found it significant that Congress was directing the readers to Title V. I guess what bothers me, though, in the FLSA amendment is that the references to Title V are extremely limited to just the definitions for executive agency and military departments. I will grant— I mean, obviously, Congress could have gone further and said, and by the way, also how employee is defined in Title V, but it did not do that. It only limited references to Title V just to these two small items, the definitions of what is an executive department, what is a military department and an executive agency. That's right, Judge Chen. If it actually referred to the definition of employee, I don't think we would be here today. I guess my concern is that the inference goes the other way. They knew full well about Title V. We have to assume they understood the Supreme Court found that what kinds of employees that were covered by FLSA was truly expansive. They said that it's difficult to imagine a more broad definition of what an employee can be other than the one provided in the FLSA. And yet, for whatever reason, Congress elected to limit its references to Title V to just the definitions of military department and executive agency. So that does not distinguish this from the Jackson v. Modley case, though, which was considering very similar limited references to Title V in the context of Title VII and thought that the direction to Title V in Title VII was enough for the D.C. Circuit to go beyond the actual definitions themselves and look at the broader context of Title V and even look at the definition of Title V's definition of employee, even though Title VII did not refer to that. So textually, those would be the hooks that we would rely on. Do you have any binding precedent that requires appointment for individuals to be considered federal employees under the FLSA? I just want to level set on that. So Judge Honeyman, your question is, is there anything that requires appointment to be considered? So I think the answer is no. I would note, though, that sometimes courts use appointment as a shorthand for meaning something broader about congressional authorization. So Teston has, in the Supreme Court, even used appointment as a shorthand. So the trial court did talk about appointment, but it also cited this court's language to the effect that absence-specific authorization. I understand that's what the trial court meant when it talked about appointment. But we're not arguing that appointment is a sine qua non for FLSA employment. We're arguing that appointment is the primary way that Congress creates employment relationships. There are other ways, but Congress has to do it. Other ways could be through specific legislation. Of course. And so it's possible that the FLSA is an example of that kind of specific legislation. Yes, absolutely. Your view, of course, is no. If they were going to do that, they needed to do it much more clearly than they did. Because aside from the textual arguments you just presented, you think there's some bigger backdrop understanding of what it means to be a federal employee that just sort of is like this Bigfoot imprint over anything and everything that's said here in the FLSA because the FLSA, in your view, just isn't clear enough. Essentially, that's right. What's the principle that even if there is an apparently clear definition of what it means to be an employee, including a federal employee in the statute, it can still be Bigfooted and overwhelmed by this broader but a little bit vaguer understanding of what it means to be a federal employee? So we respectfully disagree that the definition of employee is clear. We think that you have to look at the concept of federal employment, which Congress was referring to here, and it does have a special meaning. It's always had a special meaning. You see some indications in the legislative history of that in addition to all the cases that preceded and postdated this case. So I guess those understandings of being a federal employee are somehow more special and more important than more common law understandings of what it means to be an employee, which the Supreme Court has repeatedly said are discarded and put to the side in the FLSA because the FLSA went out of its way to create a very special, aggressively broad definition for purposes of the FLSA. It did in the 1938 amendments. And then in the 1974 amendments, Congress creates a different definition for federal employees. It doesn't use the general definition of employee. And in our view, that's a hint as to— Can you say that again? So instead of using the definition of employee in E-1, which is any individual employed by an employer, it uses the definition for federal employees in E-1—or excuse me, E-2A. So it says any individual employed by the government of the United States as a civilian in the military departments in any executive agency. But then the critical word there is employed, which then gets a definition several subsections down in G. Well, I would say the whole phrase is significant. The fact that this definition was carved out of the general definition of employee—Congress would have understood that there's something special about being an employee of the United States. But what's scary is you're asking us to read the term employed by in E-1 differently from employed by in E-2. I think it does mean something different in the federal government context. To be employed by the federal government is different. It requires certain formalities. There's a definition for employee right here in the FLSA. You can see what my problem is. I keep going over it, and maybe I'm a little dense. But we have a definition for employee here in the statute. You're asking me to look away from it for purposes of E-2, even though it's structured symmetrically to the language in E-1. So it doesn't stop—first of all, the definition doesn't stop there. So we're looking for indications of Congress's intent. The fact that it then goes on to talk about Title V, that's one indication that Congress had a specific— The definition doesn't stop there. I'm sorry. I might have missed something you were just saying. So Section 203 E-2A does not stop with employed by. So it goes on to say any individual employed by the government of the United States as a civilian in the military departments as defined in Section 102 of Title V. And again, that language, very similar language, was enough for the D.C. Circuit to think that Congress was directing the reader to Title V as a whole and incorporating concepts from Title V into its definitions in Title VII. Jackson had less to do than I think you need to do. That is, the reference there, it didn't have—obviously, it didn't have the word civilian in it or the case wouldn't have arisen. It just said that was an employee in—I guess I have the language—employees or applicants for employment in military departments as defined in Title V 102. And the D.C. Circuit said, well, look at what it means to be a military department under Title V, and you look at the title of the 1966 recodification of all of Title V, and it says civilian employees. And then you look at other parts and you get civilian, not other things. But then it carefully said it didn't have anything like 203G to be, I don't know, overriding. And that's the problem here, that on the expression employed by, we actually have a FLSA definition, and this language is not easy to read as doing anything other than two things. One, saying who this subunit is within the federal government, and for the military one, saying civilian. But the rest, it's not changing what it means to be employed. So there was another complexity in Jackson, too, which was there's a definition of employee that doesn't distinguish between federal sector workers and private sector workers. So that made the case somewhat harder, but I take your point. It's a different statutory scheme. But you're also right that the D.C. Circuit said there's this reference to Title V, and so we're going to look a little bit broadly in Title V for an answer to the question. And I think that's what I take it that's your argument here, too. The second reference to Title V, the 105 reference, also says kind of look at Title V, even though it's not, you would agree, not in fact restricted to being a Title V employee. Yes, it's not restricted to being a Title V employee. That's what makes this difficult. But it's alluding. I understand your question. It's alluding to concepts of federal employment law distinctive to federal employment law, which leads us to think that that's what Congress had on its mind. When you combine that with all the cases that say you have to be appointed to a position to get the benefits of that position and you have to, in the absence of some specific statutory authority. So what, under Mr. Lambrow's reading, what the FLSA is doing is creating a really significant expansion of what it means to be a federal employee for pay purposes. Do you think that we need to consider any sort of legislative intent for you to win in this case? So I don't think the idea that the backdrop of existing law, I take that to be a canon related to the language. We assume that Congress means, when it says something that has an established meaning, it means that. So I think you can consider that without looking at Congress's intent. We do cite some legislative history, which I think supports our view that there's a baseline assumption that these employees were, these are federal employees already. Can you remind me what that is? So there was a complaint from, or there was an argument from the Civil Service Commission that if we add federal employees to the FLSA, it'll confuse. This is reflected in the big house report in 74. Yes, that's right. And the Civil Service Commission said this could confuse the administration of the law because these are federal employees. But I thought that the committee's response was to say, well, we're going to give, I guess, OPM. What's OPM now? Civil Service Commission. You don't have to follow the Department of Labor blindly. You get to exercise some discretion about this. And the regulation that exercises that discretion just repeats this 203G phrase, right? So right. That's generally right. But the basis for the premise for what the committee's response was, was these individuals are already covered by Title V. But along the lines of what Your Honor just said, you can resolve that consistent with DOL regulations. Did you have a particular quote? I mean, at least when I was looking at that report, I was looking for something that said, whatever one would make of it, said something like specificity. Who qualifies as a federal employee being covered is determined by other provisions outside this act that we are enacting. I'm sorry. Something where the House committee said, and I didn't find it. When we are extending FLSA protections to federal employees, who qualifies as a federal employee is defined elsewhere. So there's nothing beyond what's in our brief. And by elsewhere, I mean outside the FLSA, not outside the 1974 amendments. Right. There's nothing outside of what we quoted in our brief that I can point the court to. Is it the government's view that if someone enters into a personal services contract with the government under FAR Part 37, they're covered by the FLSA? So it's undisputed that that did happen to Mr. Lambrow here. So I guess for someone like Mr. Lambrow, at least when before he had, I guess, a contract with the Voice of America that it wasn't a personal services contract and he wasn't appointed. I'm just wondering how many other people are like that inside the federal government. I'm just wondering what are the what's the scale of consequences if we were to conclude here? No, FLSA doesn't require an appointment for someone to be considered and to be employed by the government in an executive agency as that term is used in the FLSA. So I think you're talking about non-personal services contractors like Mr. Lambrow. I haven't seen any data on that. I know there are several hundred in his position at the time covered by the complaint. There are much fewer now, but there were several. It's in the hundreds. But this type of case has arisen in other contexts. The Court of Federal Claims, there's a postal contractor who sued in Diaz. There was a Navy child care worker in Petzloth. So there are other contexts in which it arises. I just haven't seen any data that shows how widespread it is. As far as you understand, it's not uncommon and it's legal? As far as I understand, it's not uncommon and it's legal, yes. What's not uncommon? To have a relationship like this, the relationship that Mr. Lambrow had, just based on those cases. Again, I haven't seen any data beyond the cases.  This is coming to light pretty late. There's a lot of practice, including this Court's decision in Guevara, that has rejected these types of arguments. There haven't been many claims that Mr. Whitcomb has pointed to that suggest that there were widespread misunderstandings about this. At some point, the practice of the government comes into play as well. This is ultimately a question of whether Congress waived its sovereign immunity. Our view would be Congress doesn't do that lightly. You would expect, given how longstanding the traditions at issue are here, that Congress would have done so much more explicitly than it did. A, and B, that there be some post-1974 developments that would suggest that people understood Congress to be doing what Mr. Lambrow suggests. The agencies are allowed to hire non-personal services contractors pursuant to their general contracting authority. There is a potential that a lot of agencies, if Mr. Lambrow is correct, were using that authority, accruing liabilities that they didn't really have reason to understand, in our view, were accruing as to the FLSA. That would be a concerning implication of Mr. Lambrow's argument. I see I'm far over my time. Can you address what – I guess it's a question that I discussed a little bit with Mr. Whitcomb. These various other cases, the FMLA cases, Title VII, again, putting aside disparities, the 501 Rehab Act, I forget what there's – one other statute in play. I didn't see the government making this argument in those cases, and I wonder what to make of that. And in the FMLA case, in the DDC, government seemed to actually be making something of an opposite argument about a period of time for the relevant FMLA provision where he was clearly an independent contractor saying, well, he was really an employee so it should count. So it makes me wonder how, I don't know, dramatic the consequences would be of saying, we just think 203G obliged. So at the starting point, I would say not all statutes are the same, and there might be reasons to argue different statutes differently. So the Rehab Act, I think, uses the ADA's definition. I don't think that distinguishes between federal employees and private sector employees. And the statutes have different purposes. So the Supreme Court's explained employee means different things in different contexts. So there may be good reasons to not make arguments in particular cases. I guess my difficulty with that level of general argument is that I don't think you – I think the only way you could win this case is if you have a logical structure that says everybody knows what's necessary to become a federal employee. That is to create an employment relationship with the federal government. It's basically appointment. There can be other congressional authorizations. But there is a – such a long history of formalities and whatnot. You need something really special to displace that. And I don't – and the kind of argument you're making about how, well, discrimination is one thing. And that doesn't seem to me to do it to – just at that level unless there's something in those other statutes that says for purposes of FMLA or for purposes of Title VII, an employee even of the federal government shall be such and such. Something – So the legal principle we're relying on is specific to employee pay. So always the cases that we're talking about, the federal circuit cases, testing, they're saying the benefits without specific authorization, the benefits and emoluments of federal employment are reserved for appointees. So we're making a pay-specific argument. That's the tradition we're talking about here. There may be other traditions like anti-discrimination where the result is different. I would say in the FMLA case, that's importing a definition from the FLSA. I think the analysis there should be the same. I can't speak to why the government didn't pursue this argument there. But I – without having dug into the details, it seems like that would be a prima facie case where that would be available to the government. But again, all those strong traditions of appointment for federal – appointment for federal employment, that's absent specific legislation. Sure. That's right. Our bottom line position is that the FLSA was not – it was specific legislation in terms of – Just about pay for federal employees. Just backing up for a second. I think there are two types of legislation. There's creating an employment relationship. There's legislation that creates an employment relationship. There's legislation that decides what the benefits of employment are. Our submission is that the FLSA falls into the latter category, not the former category. And if we're extending the employment relationship to a new area in federal law, then we are arguing you'd expect something much clearer from Congress indicating that. And do you think – what do you think the consequence for – I think I got an answer from Mr. Holcomb that – or Whitcomb that surprised me a little bit. That if Mr. Lambrow was a federal employee under the FLSA, I think he said, well, he'd be a federal employee for kind of all purposes. I assume – what's your view about that? We disagree with that. He's only bringing FLSA claims. You can be an employee under the FLSA without being an employee for other purposes. And the FLSA 203 starts something like within this section these things meet. So it has the equivalent of Title V's for purposes of Title V introductory language. Right. And by analogy – Which then suggests maybe the consequences here aren't so dramatic. I don't agree with that. I mean the consequences of – the FLSA has pretty severe financial penalties in terms of mandatory overtime violations that could apply to a class of individuals that we – that's really hard to quantify. I don't think – I'm not aware of any attempt to quantify how many individuals are out there that would fit into this bucket. And have you made – I don't remember. Have you made an argument that the broad but multi-factor somewhat imprecise FLSA standards for what it means to employ are problematic precisely because they're imprecise? That is, you're not going to know for any number of non-personal service contractors whether they meet the economic realities test or not. And that's very troublesome. I don't think you – We haven't argued that in this case. This court said that to some extent in the Sayon Lee case, talked about the fuzziness and the sort of difficulties it presents for plaintiffs who later come back and try to invalidate the contracts. We haven't really made an argument along those lines. We also aren't conceding that Mr. Lambrou necessarily would prevail on this issue ultimately. Obviously, this is the motion to dismiss stage. Right. But it could be an issue about how much you're going to have to litigate and what decisions you're going to make in the face of uncertainty. That's right. But you haven't really presented an argument like that. That's right. Okay. Well, thank you very much. We should hear rebuttal. And why don't we save five minutes and we'll see how it goes. Thank you. Thank you. Thank you for policing the court. I wanted to go sort of in reverse chronological order from what Mr. Carhart was talking about, which is – I think first – and I went back and re-read our complaint, just sort of refreshing my memory on this. So our allegation is pretty succinct, and that is we even go as far as qualifying it in our complaint. We argue he should have been an employee versus a contractor and that he was deprived of overtime. Can I just ask, don't you have to be making the argument that he actually was an employee? Yes. That's where we are. That's your way of saying he wasn't, but he sure should have been. Okay. I think by the government's – I think what we're trying to do – and you're right, Your Honor. We're trying to answer the government's argument that, hey, he's not afforded FLSA protections because he wasn't an employee. And we're arguing that you don't get to sidestep the benefits of FLSA by simply withholding an appointment. Unilaterally withholding an appointment or unilaterally withholding things – I mean, that same document that the two of you were discussing about the PSC, it pointed to the fact that the agency had a limited number, a limited allocation of personal services contracts that it could dole out. It had already exceeded those. So it didn't really have the PSC mechanism at the time. It will argue, I think, intelligently that also at the time it didn't have – there was a hiring freeze and a limit on the number of people it could have appointed. And I was anticipating an argument that said, hey, our hands were tied. We needed these people to do the work. We had no other choice but to use the procurement route and create individual contracts with Mr. Landborough and those like him. And we addressed that in both our complaint and in our argument here, which is that there was another mechanism. They simply could have competed this thing out on FedBizOpps or FBO and gotten one or two contractors. Every time you go down this line, my mind goes to I don't know how that bears on the only question we have to decide. Was Mr. Landborough an employee under 203G? Our position is absolutely. Absolutely he was an employee. What we're trying to get to – what I'm trying to use to help to aid the court is to point to the – I mean maybe this has something to do with willfulness or something. That's right. The willfulness in the government's – The threshold question doesn't have anything to do with – does it with whether – the very threshold question, namely, does he – do we even reach the question of qualification under 203G? Maybe – and the economic reality says I don't remember whether the kinds of considerations that you are alluding to might affect the answer to the question, whether once we're applying those standards, whether you're in or you're in or you're out. But the rest – I mean we're not there yet. So thank you, Your Honor. To the first – as defined, we – our argument, and I think it's unequivocal and clear all over our pleadings and in our arguments to this court, Mr. Landborough and those like him qualified as employees under the FLSA because he was – suffered to work, period. He was allowed to work. That's the end of that inquiry. Your response to the government's argument that Section 203 points to – look at Title V. I just want kind of your short response to that. The short response is I think the same one that Jackson gives us, which is the Title V makes – Jackson gives a distinction between a federal employee and a services member. It doesn't. It stays clear of making a distinction between a federal employee and a contractor. It actually goes to the plaintiffs to make that distinction. It simply says that Title V carves out military members from federal employees, and therefore Title VII doesn't apply to them. FLSA doesn't do that. No other – and they are clearly defined. I mean Mr. Landborough – FLSA does carve out civilian – uniformed members. Right. But again, to this court's point, which was argued earlier, it's above the definition of employee. I mean in basic statutory construction, right, we go – we read the document. The definition that applies before the carve out – or I'm sorry, after the carve out applies to everything before it. An employee is defined as someone who works or who has suffered to work. And that's indeed – that's below the definition or what the court alludes to and the government alludes to as this carve out. It doesn't – and again, to Mr. Carhart's argument, well the government – the Congress could have. Well, certainly Congress could have if it wanted to. It could have created a carve out in the FLSA that says government employees, unless appointed, are not afforded these protections. It didn't do that. It simply said – it relied on the definition of an employee which has suffered to work, which falls below the carve out that the court has described. Okay. Thank you for that argument. Thanks to all counsel. The case is submitted.